[20940. Department Two.—May 11, 1893.]

THE PEOPLE, RESPONDENT, v. CHARLES FAGAN, APPELLANT.

CRIMINAL LAW — GRAND LARCENY — EVIDENCE — FACTS CONSISTENT WITH INNOCENT RECEPTION OF STOLEN GOODS — IMPROPER CONVICTION.—In a prosecution for grand larceny, where it appears that the defendant did not personally take, or assist in taking the stolen property, and the facts proven are consistent with the supposition that he had advised against the theft, or only knew of it after its commission, or that he was simply a receiver of stolen goods, knowing them to have been stolen, a verdict of guilty of grand larceny is not justified, and should be set aside.

ID.— OFFENSE CHARGED IN INDICTMENT MUST BE PROVED.— To justify the conviction of a defendant on a criminal charge, he must not only be proven to have committed an offense, but the very offense charged in the indictment.

APPEAL from a judgment of the Superior Court of Stanislaus County, and for an order denying a new trial.

The facts are stated in the opinion of the court.

*James H. Budd,* and *L. J. Maddux,* for Appellant.

The evidence is insufficient to warrant the judgment of conviction. (*People* v. *Hurley,* 60 Cal. 74; *People* v. *Swinford,* 57 Cal. 86; *People* v. *Noregea,* 48 Cal. 123; *People* v. *Ah Ki,* 20 Cal. 178; Wharton's Criminal Evidence, sec. 758.)

*Attorney-General W. H. H. Hart, Deputy Attorney-General William H. Layson, District Attorney L. W. Fulkerth,* and *J. C. Needham,* for Respondent.

The evidence was sufficient to show guilt and warrant a conviction. (See *People* v. *Deegan,* 88 Cal. 602; *People* v. *Ah Jake,* 91 Cal. 98; *People* v. *Bentley,* 75 Cal. 407; 77 Cal. 7; 1 Roscoe's Criminal Evidence, sec. 17; 2 Burrill on Circumstantial Evidence, ch. 1, pp. 275, 278; *People* v. *Gill,* 45 Cal. 285; *People* v. *Rodundo,* 44 Cal. 541; *People* v. *Clough,* 59 Cal. 440; *People* v. *Velarde,* 59 Cal. 457; *People* v. *Fagan,* 66 Cal. 535; *People* v. *Hannon,* 85 Cal. 374.)

The COURT.— The defendant, having been convicted of grand larceny, appeals from the judgment and from an order refusing him a new trial. He claims that there was no evidence against him, or if any, none that he had committed the crime of grand larceny.

On October 2, 1891, twenty-one head of cattle were taken from Mr. Weyer's ranch, about twenty-one miles east of Modesto. The next morning they were seen at Clark's place, about three miles west of Modesto. They were driven from there by William Ducker, a co-defendant of appellant, and another person not recognized, but who was not appellant. During the night of October 8th eleven head of them were left or found their way to Howard's ranch, near the Coast Range, how far from Modesto cannot be made out from the evidence exactly, but apparently near fifteen miles. The brands upon these cattle had then been changed and the ears cut off so as

to obliterate the marks.  Here they were taken in charge by William Grummett, with whose cattle they were found.

October 17th the sheriff of the county, having learned of the larceny from Weyer's place and of the presence of the cattle at Howard's, came over, took possession, turned them into Howard's enclosure and asked Grummett to keep watch of them. At the request of the sheriff Grummett visited defendant's place, and finding appellant's son, Frost Fagan, informed him in regard to the cattle.  Frost said he owned the stock and would drive them away.  On the nineteenth, about midday, some person who was not recognized drove the stock from the enclosure toward a canyon which extends into the Coast Range toward the Fagan place.  The sheriff was notified and came over that evening, and with a posse tracked the cattle to Fagan's cabin in the Coast Range.  There he found the appellant, his son Frost, William Ducker, who had been seen driving the cattle, and his brother in bed, and the eleven head which had been driven from Howard's place the day before in a corral about fifteen feet from the cabin.  Appellant and his son both said the cattle were astrays.  At first appellant said the first time he had seen the cattle was the morning of the nineteenth, when he discovered them on the range, but didn't know where they came from; then, correcting himself, he said he had seen them there a week before.  When the sheriff was questioning appellant's son as to how the cattle got into the corral, the appellant said: "If the cattle were stolen Billy Ducker and I must have done it, for Frost had nothing to do with putting them into the corral."  It does not appear how long Fagan had lived at the cabin or had been occupying or claiming it.  He told the sheriff that he intended to homestead the place for a hog ranch, also that everything belonged to Frost, as he couldn't own anything because of his creditors, and that there were some thirty head of stock on the place.  Subsequently some five head of the stolen cattle, other than the eleven which had been at the Howard ranch, were found in the Coast Range within five miles of the Fagan cabin.  Upon these the brands and ear marks had been changed in the same way as on the eleven head.

There was evidence showing that Fagan and his son were acquainted with the vicinity of Weyer's place from which the

cattle had been taken. The prosecution also proved that on the morning of the third, which was the morning after the cattle were taken from Weyer's place, appellant was at his cabin, which is some fifty miles from Weyer's. He then told the witness that the place belonged to Frost, as he could own nothing; that his son had been working with a machine, had saved his money, and would buy stock for the range. He thought his son was then at Modesto and might return with twelve or fourteen horses. In addition he thought his son would have on the place some twenty head of cattle. Appellant had been seen working about the cabin hauling lumber, fixing the corral and a shed.

There was no direct evidence connecting the appellant with the property in any way prior to the time when he was found with it by the sheriff at about four o'clock in the morning of October 20th, more than seventeen days after they had been taken from Weyer's place. It was admitted by the district attorney at the argument that he was not present when the cattle were taken. The indictment charges the taking to have been from Weyer on the second, and at the trial the prosecution stated that this was the taking relied upon and not the taking on the nineteenth from Howard's. During nine days of the seventeen which had elapsed after the taking, before appellant is shown to have had anything to do with the cattle, they were in the custody of Grummett, who at least during two days of that time was acting as the bailiff of the sheriff. As Frost Fagan had informed Grummett that he would take the cattle, the last taking could hardly be called furtive.

There is no direct evidence connecting Frost Fagan with the taking, except this claim made to Grummett. Evidently appellant did not himself, personally, take the cattle or assist in such taking. He could therefore only be convicted on the ground that though not present he had previously advised and encouraged the theft. There is no direct evidence that he knew that the theft was contemplated, or that he knew even on the morning of the twentieth, when arrested, that a larceny had been committed, much less that he had previously advised and encouraged it. That he had previously to the actual commission of the theft advised and encouraged it, is inferred from the circum-

stances above set out. That the circumstances raise a very strong suspicion against defendant may be admitted. We are not favored with an argument showing how the guilt is inferred, but it is manifest that it is claimed that Fagan was expecting his son to bring in stock, about the number taken from Weyer; that he was preparing for them. He was taken with them and in company of his son and Ducker, who it is claimed did take them and drove them from Weyer's, more than fifty miles to the Fagan cabin; and then when surprised with them, he falsely stated that he had seen them on the range a week before and the day before, and then stated that if they were stolen he and Ducker must have done it. A great deal of importance seems to have been attached to the last statement, but we think it only constitutes an admission that appellant had assisted in putting them into the corral. It was evidently made upon the assumption that the only ground for charging a larceny was the fact that the cattle had been taken from the range and put into the corral. The old man strove to shield his son.

No doubt the false statements that the stock were estrays, which had been taken from the range, tends very strongly to show that at that time Charles Fagan knew or at least suspected that the cattle had been dishonestly come by, but they do not prove that previous to the theft he had advised and encouraged its commission. Not a circumstance is proven, which is not entirely consistent with his innocence of the particular offense with which he is charged. To justify a conviction, one must not only be proven to have committed an offense, but the very offense charged in the indictment. All the circumstances are consistent with the supposition that he had advised against the theft, or only knew of it after its commission, or that he was simply a receiver of stolen goods, knowing them to have been stolen.

Perhaps the evidence would sustain a charge of receiving stolen goods, knowing them to be stolen, but the circumstances are insufficient to show that he had previously to the commission of the offense advised and encouraged its commission.

In view of the conclusion that the evidence does not sustain the verdict, it is not necessary to consider the other assignments of error.

Judgment and order reversed.