[Crim. No. 293.  In Bank.—February 2, 1898.]

## THE PEOPLE, Respondent, v. JOSEPH GREGORY, Appellant.

CRIMINAL LAW—HOMICIDE—CONSPIRACY TO MURDER—ARREST OF DECEASED— SUFFICIENCY OF CIRCUMSTANTIAL EVIDENCE.—The evidence reviewed and held sufficient, though circumstantial, to show a conspiracy to murder the deceased, to which the defendant and his codefendants and others were parties; that the killing was in consummation of the conspiracy; that the arrest of the deceased upon a criminal charge was not in good faith, but a mere pretense, and an act done in direct furtherance of the scheme and conspiracy to murder, and to sustain a verdict of guilty of murder against the defendant.

ID.—EVIDENCE—DECLARATIONS OF CONSPIRATORS.—The declarations of persons whom the evidence sufficiently tends to show were co-conspirators with the defendant to kill the deceased, though made in the absence of the defendant, and during an interval of three or four months prior to the homicide, were admissible to show the inception and creation of the conspiracy, and that the taking off of the deceased as a common enemy occupied the minds of the conspirators, and to show conversations among them as to the means to be used, and the parties to participate in the killing; and the declarations of one who was admitted by the defendant to be his friend, who would aid him in case the deceased was killed, tending to show him to be a

fellow conspirator, and to have desired the killing of the deceased and another person, were admissible, in connection with the evidence of the defendant's statement.

ID.—DECLARATION AS TO ACTS OF CONSPIRATORS—HARMLESS RULING.—Where there is no dispute as to the fact that seven men named had just left a certain house and proceeded in the direction of the homicide, evidence of the declaration of a codefendant that the seven men seen in the distance were the seven men who had just left that house, giving the same names, could do the defendant no harm.

ID.—STATEMENTS OF WITNESS MADE AFTER KILLING—INTEREST AND FEELING OF WITNESS.—The interest and feeling of a witness are always material elements to be considered by the jury in weighing his testimony; and evidence of statements made by a witness for the defendant, after the killing, tending to show his interest and feeling is competent for that purpose.

ID.—REFUSAL TO PERMIT ADDITIONAL COUNSEL—DISQUALIFICATION OF JUDGE—DISCRETION.—Where the defendant was represented by two counsel, and after the impanelment of one-half of the jury, application was made to enroll a relative of the judge as an additional third attorney for him, whose admission for that purpose would disqualify the judge, and result in a continuance of the cause and a discharge of the jurors selected, the granting or refusal of such application was in the discretion of the court, and where the court declared the application to be in bad faith, and refused to grant it, its refusal will not be disturbed on appeal; and though it might have been better practice to have announced the decision without the presence of the jury, yet where nothing was said or done by the court upon which to predicate error, its action will not be disturbed merely because it was announced in open court and in the presence of the jury.

APPEAL from a judgment of the Superior Court of Trinity County and from an order denying a new trial. T. E. Jones, Judge.

The facts are stated in the opinion of the court. Further facts are stated in the opinion rendered by the court in the case of *People v. Van Horn*, 119 Cal. 323.

R. R. Fowler, Oregon Sanders, and J. A. Cooper, for Appellant.

W. F. Fitzgerald, Attorney General, and C. N. Post, Deputy Attorney General, for Respondent.

GAROUTTE, J.—Vinton, Hayden, Gregory, and Radcliff were charged with the murder of Littlefield. Upon a separate trial Gregory was convicted, and now prosecutes an appeal to

this court from the judgment and order denying his motion for a new trial. The case is purely one of circumstantial evidence. The scene of the homicide was in a mountainous and sparsely settled district in the county of Trinity, and the parties interested all resided in that territory of country. Upon September 26, 1895, Vinton reported himself at the house of Hayden, a friend, wounded by a rifle ball. He claimed that he had been shot from ambush by his enemy Littlefield. Upon the forenoon of the 27th there had gathered at Hayden's house from various places and distances, principally at the invitation of Vinton's couriers, these four defendants, and also Crowe, Laycock, and the two Van Horns, all friends of Vinton and enemies of Littlefield. During the morning of September 27th they were notified that Littlefield was several miles distant, engaged in driving a herd of cattle. Bayles Van Horn was a constable. Up to 3 o'clock of this day these men spent their time at Hayden's house in talking with Vinton and resting at ease. Gregory cleaned his rifle. About 3 o'clock these seven men (Vinton, being wounded, remained at the house) started toward the point where Vinton claimed to have been shot, which was also in the general direction where Littlefield was reported to be. They were all upon horses except Radcliff, who was mounted upon a mule, and were all armed with rifles and revolvers. After leaving the house, Van Horn deputized Crowe to assist him, and these two proceeded to the point where Littlefield was located and placed him under arrest for the shooting of Vinton. The remaining five men went to the point where Vinton claimed to have been shot, and there examined the ground for tracks. From this point the trail which Van Horn and Crowe would travel with the arrested man was in view. The five men remained at this point some time, when Gordon Van Horn departed, then Hayden and Laycock rode away, Gregory and Radcliff remaining behind. Littlefield was arrested, disarmed, and the journey over this trail toward the county seat began— Van Horn in front, Littlefield next, and Crowe at the rear. Van Horn had his pistol, Crowe a rifle. About sunset parties some distance away heard three shots fired. Laycock and Hayden returned to Hayden's house separately during the evening. Radcliff and Gregory arrived at the Vinton cabin about 8:30 P. M., Radcliff with a rifle, Gregory with rifle and pistol. This cabin

was a few miles from the scene of the murder. The morning of
the 28th Littlefield was found hanging to the limb of a tree at a
point upon the trail about where the shots were heard, and three
gunshot wounds were found in the body. It appeared from an
examination of the surroundings that two horses and one mule
had been tied in the brush near the scene of the murder, the mule
unshod. Radcliff's mule was unshod. Van Horn and Crowe have
heretofore been charged with the murder of Littlefield and con-
victed. Upon appeal to this court the judgment was affirmed. A
more detailed recital of the facts surrounding this homicide may
be found in the opinion of the court rendered in that case. (*Peo-
ple v. Van Horn*, 119 Cal. 323.) It may be further suggested that
for several months prior to the murder, defendant had made re-
peated threats against the life of Littlefield.

Upon the foregoing state of facts, coupled with minor inci-
dents and circumstances unnecessary to here detail, the jury
was entirely justified in finding the defendant guilty of mur-
der. The jury was further justified in finding the exist-
ence of a conspiracy to murder Littlefield, participated in by
the four defendants named in the information filed in this case.
The jury was also justified under this evidence in declaring that
the killing was a consummation of the conspiracy, and that the
arrest of Littlefield was not in good faith, but a mere pretense, an
act done in direct furtherance of the scheme and conspiracy to
murder. Upon a careful reading of the record we are prepared to
say the sufficiency of the evidence to justify the verdict cannot be
gainsaid for a moment.

It is claimed that the trial court committed error in the ad-
mission of certain evidence. The objections of the defendant
are based largely upon the admission of declarations of Vinton,
Laycock, Hayden, and possibly others of the eight men who were
at the house of Hayden upon the day of the murder, and whom
we deem the evidence sufficiently locates as conspirators organ-
ized to kill Littlefield. These declarations were made during an
interval of three or four months prior to the meeting at Hayden's
house, and were testified to by various witnesses. As for exam-
ple, "Vinton said it would be a good time to hang Littlefield, and
Hayden was satisfied to go and wanted witness to go with him."
In talking to Vinton about hanging Littlefield, "Laycock said he

would count over who would go, and enumerated Vinton, Lay-cock, Watkins, Hayden, Lynch, and the witness." Hayden said: "We'll have to do something with those fellows. There is no use taking the law to them. We'll have to do something else." In a general conversation between Crowe, Vinton, Gregory, and Hayden, "they said if they could not convict him by lawing, and they did not think there was much use trying in Mendocino county, they would hang him." While some of these declarations were made in the absence of the defendant, still they were admissible as showing the very inception and creation of the conspiracy. As a general rule, a conspiracy can only be established by circumstances. These men were all friends. Littlefield was a common enemy. His taking off occupied their minds. They deemed it a necessity, and these conversations with each other as to the means to be used and the parties to participate in the killing were matters square to the issue. These things went on for months. The opportunity for the killing was the one thing lacking, and that presented itself upon the twenty-seventh day of September by the wounding of Vinton. Whatever the cause of that wounding, we are not now concerned.

The witness Doolittle, under objection, testified that George E. White said to him: " 'Frank, why don't you do up those sons of bitches up there, and then you won't have to be bothered about law out there.' And I said: 'What sons of bitches do you mean?' And he said: 'Jack Littlefield and Ves. Palmer.' " The attorney general stated that he proposed to follow this evidence by other evidence showing White to be connected with the murder, and that, if not so connected, this evidence might be stricken out. In view of defendant's statements to witnesses that White was his friend and would assist him in case Littlefield was killed, the declarations of White testified to by Doolittle were admissible in evidence. These declarations of White were some evidence tending to show him to be a fellow conspirator, and, when taken in connection with defendant's own statement to that effect, were matters properly placed before the jury for their consideration.

Vinton's statement to Shores that the seven men whom Shores saw in the distance were the seven men who had just left Hayden's house (naming them) does defendant no harm. It is con-

ceded by all parties that these seven men had just left the house
and proceeded in the direction of the scene of the homicide.
The evidence of Simonim as to the statements of Lightfoot, a
witness for defendant, made after the killing, was competent
evidence for the purpose of showing the interest and feeling of
Lightfoot.  The interest and feeling of a witness are always
material elements to be considered by the jury in weighing his
testimony.  Neither did the court committ error in denying a
challenge to the juror Griffith upon the ground of actual bias.

Defendant was represented by two counsel.  After the trial
had progressed to the extent that six jurors had been impaneled
and sworn to try the case, an application was made to the court
that J. W. Turner, a duly licensed attorney and counselor at law,
be joined as additional counsel for the defense.  Turner was a
brother in law of the judge of the court.  His appearance in the
case as an attorney would have disqualified the judge to try the
case.  Therefore, a granting of the application would have nec-
essarily resulted in a continuance of the case, a discharge of the
jurors selected, and the selection of a second judge from some
adjoining county to proceed with the trial at a future time.
The trial court declared the application to be made in bad faith,
and refused to grant it.  The proposition here involved is some-
what novel.  At the same time we consider the court was fully
justified in the action taken.  Of necessity, the granting or de-
nial of such a motion is a matter resting largely in the discretion
of the court; and the facts would have to disclose an extreme
case before the discretion vested in and exercised by it in such a
matter would be held abused upon review here.  In dealing with
such matters, the prompt and orderly administration of justice
must ever be kept in view, and the trial court is allowed most
liberal limits in denying a motion of this character.  If the right
of defendant to have Turner associated as counsel in the case
were an absolute right, he could have held the matter in abey-
ance until the final argument of the case, and then, if he deemed
the result likely to be adverse to him, could at that time have
made the application here made, and thus have caused a total
miscarriage of justice.  Complaint is also made of the action
of the trial court in rendering its decision upon the aforesaid
application, in open court and in the presence of the jury.

While in passing upon the motion the language of the court is forcible, nothing was said or done upon which to predicate error. It possibly would have been a better practice to have announced the decision without the presence of the jury. At the same time, the jurors must be presumed to be honest, intelligent men, ready and desirous of deciding the case according to the law and evidence, and to the exclusion of all extraneous matters. It would be a most violent presumption to assume that the language here used by the trial judge upon this incidental proceeding in any way affected the final result of the trial.

There is no sound ground upon which to base an objection to the instruction assailed by appellant in his brief.

For the foregoing reasons the judgment and order are affirmed.

McFarland, J., Harrison, J., Van Fleet, J., and Henshaw, J., concurred.