[Crim. No. 4297. Second Dist., Div. Two. Mar. 11, 1949.]

THE PEOPLE, Respondent, v. CLYDE LINDSEY, Appellant.

Jefferson & Jefferson, Martha Malone Jefferson and Bernard S. Jefferson for Appellant.

Fred N. Howser, Attorney General, Frank Richards, Deputy Attorney General, William E. Simpson, District Attorney, and Robert Wheeler, Deputy District Attorney, for Respondent.

MOORE, P. J.—Convicted by the court of robbery in the first degree, a jury having been expressly waived, and three prior convictions for felonies having been admitted, defendant now demands a reversal of the judgment on five grounds, seriated and discussed below.

### THE EVIDENCE IS SUFFICIENT

Sam Shodall was the manager of a market on Sunset Boulevard in Hollywood on September 5, 1947. About 8 a. m. as he was about to unlock the rear door a stranger approached him, stuck a gun in his stomach and firmly declared his intention to enter with the manager. Instantly "two fellows stepped up behind" with drawn guns and demanded to know whether Shodall "was sure the burglar alarm was turned off." Appellant was positively identified by Shodall as one of the two. They forbade him to turn on the light and commanded him to unlock the safe in a hurry. When Shodall assured them that he had no keys for its bottom compartment the bandits pushed him aside. Appellant then undertook with hammer and chisel to open the receptacle of the coveted treasure. After he had broken the hammer's handle the men tied Shodall's legs and arms with wire. At that instant Michaelis, the butcher, announced his own arrival by whistling. The men then hastily departed with about $100 which appellant had at first taken from the safe and compelled his victim to place in an empty cardboard box. Promptly upon Michaelis' announcement of his arrival a man put a gun to the butcher's face with an angry command to "stick 'em up." Instead of complying he hastily retreated in quest of a telephone wherewith he notified the police. The butcher identified Carl Friend, one of the three assailants, as the person who had thus menacingly flourished the deadly weapon. The officers promptly arrived and liberated Shodall from his metallic thongs.

The corpus delicti is not disputed. (Pen. Code, § 211.) Appellant's identification as the most active participant in

the robbery was established by Shodall's testimony. The latter was supported by the testimony of Friend, or if the latter be deemed the chief witness for the prosecution, he was. corroborated by Shodall. The implied finding is that Friend confronted the butcher with a gun at the very moment appellant was trussing the helpless limbs of the manager.

 Since the testimony of the manager was not inherently improbable, standing alone it was sufficient to support the conviction which is reinforced by all intendments. (*People* v. *Lindley*, 26 Cal.2d 780, 791 [161 P.2d 227].)

But appellant persists in contending that there was no evidence of his guilt save the testimony of his accomplice and that such is not sufficient under section 1111 of the Penal Code which requires only the "other evidence as shall tend to connect the defendant with the commission of the offense." An accomplice is one who has been concerned in the crime under investigation either as aider, abettor or actual participant. (*People* v. *Shaw*, 17 Cal.2d 778, 800 [112 P.2d 241].) While his corroboration is an essential safeguard against corrupting the stream of justice it is sufficient if it creates more than a suspicion of guilt and tends merely to connect the accused with the crime. (*People* v. *Trujillo*, 32 Cal.2d 105, 111 [194 P.2d 681]; *People* v. *Tinnin*, 136 Cal.App. 301, 304 [28 P.2d 951].)

Appellant's confusion arises out of his egregious concept that his participation is not shown independently of the testimony of the accomplice. Such is a specious deduction. The statute merely contemplates that there shall be proof other than the testimony of the accomplice that the defendant participated in the crime. The testimony of Shodall eloquently proves such participation.

The authorities cited (*People* v. *Braun*, 31 Cal.App.2d 593 [88 P.2d 728]; *People* v. *Shaw, supra*; *People* v. *Kemply*, 205 Cal. 441 [271 P. 478]; *People* v. *Reingold*, 87 Cal.App.2d 382 [197 P.2d 175]; *People* v. *Robbins*, 171 Cal. 466 [154 P. 317]) do not support appellant's contention that the testimony of the accomplice was not corroborated. While Braun was shown to have been present while three men committed the offense, his active participation was not proved. Shaw's conviction was set aside because the only evidence against him was the testimony of the alleged accomplices. The Kempley case was reversed on the ground that there was no corroborative evidence aside from the suspicious circumstances. This was not "in accordance with the standards laid down

by the courts in the interpretation of the statute.'' In *People* v. *Reingold* a conviction for robbery was upset because aside from the testimony of the accomplice there was no evidence sufficient to ''tend directly and immediately to connect the defendant with the offense charged . . . there must be substantial corroboration of the testimony of the accomplice.''· In the Robbins case the only evidence besides the testimony of the accomplice was that of the landlady who saw the accused and the boy enter the former's bathroom and the window shade drawn down. In none of the five cases was there a victim who stood at cross purposes with the accused to testify against the latter. In no sense can it be said that Shodall was an accomplice. He was victim of appellant and if the court chose to believe his narrative of the events of the robbery its finding is final and conclusive in the absence of prejudicial error.

The argument is advanced that the testimony of Shodall was inherently improbable. The facts warrant no such thesis. ■ To be inherently improbable testimony must be such that it is physically impossible or its falsity must be apparent without resorting to inferences or deductions. (*People* v. *Huston*, 21 Cal.2d 690, 693 [134 P.2d 758] ; *People* v. *Braun*, 14 Cal.2d 1, 3 [92 P.2d 402].)

The attack made upon the testimony of Shodall was proper before the trier of facts but on appeal it is sterile. ■ His veracity, his powers of observation and his memory were tried by the judge below and the finding thereon is not to be disturbed by the reviewing court. (*People* v. *Newland*, 15 Cal.2d 678 [104 P.2d 778] ; *People* v. *Fleming*, 58 Cal.App. 2d 37, 44 [136 P.2d 88].) ■ Not even the appellate court's conviction of an appellant's innocence will outweigh the determination by the trial court which is the constitutional arbiter of facts. (*People* v. *Pruitt*, 55 Cal.App.2d 272, 275 [130 P.2d 767].) ■ Its judgment will not be set aside unless the record clearly shows that upon no hypothesis is there sufficient substantial evidence to prove the crime charged. (*People* v. *Lindley*, 26 Cal.2d 780, 791 [161 P.2d 227].) ■ That all intendments favor the judgment has become a legalistic cliché. So deeply grounded is this rule that a conviction will not be reversed because the identifying witness can furnish no details but merely believes the accused to have been the offender. (*People* v. *Deal*, 42 Cal.App.2d 33, 36 [108 P.2d 103] ; *People* v. *Whitson*, 25 Cal.2d 593, 602 [154 P.2d 867].)

### THE RULE OF REASONABLE DOUBT WAS APPLIED

Appellant quotes a passage from the comments of the trial judge upon the evidence and from that argues that the court applied the rule of a preponderance of the proof instead of that of reasonable doubt. In the first place he did not quote the pertinent statement of the judge. While the latter did say that he had to determine "where the greater weight in the evidence lies" he proceeded to declare that he "was convinced beyond all reasonable doubt that appellant committed the offense." But if his honor had uttered only the former quotation, appellant's argument would be futile.

■ The remarks of a trial judge made in the course of deciding a case whether written or oral are of no concern on appeal. He might repeatedly announce contrary observations in his discussion, but that which spells triumph or defeat is the contents of the judgment entered. The appeal is based on the record which excludes all comments of the court made in deriving its conclusions. (*People* v. *Grana*, 1 Cal.2d 565, 570 [36 P.2d 375] ; *People* v. *Casillas*, 60 Cal.App.2d 785, 793 [141 P.2d 768].)

### NO ERROR IN ADMITTING THE TESTIMONY OF PRITCHARD

Appellant's defense was an *alibi*. He testified that he was at his home in Vacaville* on September 5, 1947. In this he was supported by Inez Douns who testified that she lived next door to the Lindsey family; on September 5, 1947, appellant asked her to keep the baby while he and his mother attended the fair; she saw him in their yard in the afternoon; he came over with his mother to get the baby at midnight; she saw him there before September 5 "about every day." The People undertook to overcome the effect of Miss Douns' testimony by additional proof of her social relationship with appellant. After proving that she lived next door to, and fraternized with, the Lindsey family, Deputy Sheriff Pritchard who arrested appellant at the theater was called to prove the close proximity of the Lindsey home to that of the alibi witness and to give appellant's admissions at the time of his arrest. He testified that when he arrested appellant at the theater appellant stated he wished to take his girl friend, Inez Douns, home before he was taken from the show. To appellant's general objection to Pritchard's testimony the prosecutor stated that it was offered in rebuttal of the testimony of Inez Douns "and also in rebuttal to the testimony

---

*Vacaville is about 550 miles north of Los Angeles.

of the defendant." Neither the objection that no foundation had been laid nor any other than the general objection was made to Pritchard's testimony as to his conversation with appellant at the theater.

There was no error in such ruling. ■ Whatever defendant says that is against his interest can be told at his trial by a witness to his admissions. (Code Civ. Proc., § 1870, subd. 2.) ■ Appellant's declaration that he had attended a theater with Miss Douns justified an inference of an interested friendliness between them and was evidence from which her bias could have been reasonably inferred to be considered along with her testimony that appellant was at his home in Vacaville in the early morning as well as at midnight of September 5, 1947. (*People* v. *Gregory*, 120 Cal. 16, 21 [52 P. 41]; *People* v. *Bartol*, 24 Cal.App. 659, 665 [142 P. 510].)

No Error in Admitting Jones' Testimony

In an attempt to establish his alibi, appellant testified that (1) not only did he not participate in the alleged robbery but, also, that he was not in Los Angeles at any time between the first day of August and September 20, 1947; (2) that although he was in Los Angeles "in December or October," 1947, he just drove through alone on his way to San Diego; (3) but did not in Los Angeles meet Carl Friend or visit Clyde Jones' place to see about getting his car painted; (4) he was never introduced to Jones by Eddie Smith; (5) he had never seen Smith before in his life. ■ Having encompassed all time in his zeal to emphasize his alibi it was proper for the People to disprove appellant's statements that were calculated to establish his absence from Los Angeles at all the times during which he was known by the prosecution to have been in that city. To this end the People called to the stand Mr. Clyde Jones who testified that appellant accompanied by Eddie Smith called at his shop about a week before Christmas, 1947. Smith introduced appellant as a former schoolmate as follows: "Clyde meet Clyde . . ." and they laughed. Appellant was in the shop for 30 minutes. Jones observed his deformed finger and heavy beard. His car was a dull green. After Jones had testified the court interrogated appellant and inspected and sympathetically made mention of appellant's deformity.

Nothing was contained in the Jones rebuttal testimony that implied another crime by appellant and it was not objected to on that account. The bases of appellant's criticism

of the testimony is that (1) it impeaches appellant on a collateral fact; (2) it tends to place appellant in the company of Smith three months after the crime alleged, citing *People* v. *Janssen*, 74 Cal.App. 402 [240 P. 799]. While the evidence did accomplish those two facts it was not for that reason prejudicial. ▆ The propriety of rebuttal evidence is determined by the doctrine of fair play.· The accused may not overemphasize his claims of utter innocency by saying that he *never at any time* committed an offense of the kind on trial, or never met his accuser or an adversary witness in his lifetime and claim that he has thereby disproved the accusation and overwhelmed his contradictory witnesses.. Having chosen to extend the scope of the inquiry by a resort to superlatives, the accused must expect to be met with contrary proof. The prosecution will not be precluded from "showing out of the defendant's own mouth that such statement is false" (*People* v. *Gallagher*, 100 Cal. 466, 476 [35 P. 80]) and with equal justice his testimony may be rebutted by witnesses who deny what he has said in his attempt to impress the sincerity of his plea by his use of extravagant language. (*People* v. *Westek*, 31 Cal.2d 469, 475 [190 P.2d 9].)

In his reply brief appellant asserts that "respondent thus infers that appellant had testified that he never saw Eddie Smith and that the prosecution produced Jones to rebut this testimony of appellant." He denies such implication and contends that appellant followed Jones on the stand and gave testimony in rebuttal of Jones' testimony. The record reveals that appellant on cross-examination stated: "I don't remember ever seeing the gentleman." (Clyde Jones.) Thereafter, as a rebuttal witness Mr. Jones testified to appellant's call at the paint shop of the witness with Eddie Smith and narrated the conversation. The court then recalled appellant who again testified that he had never in his life visited or been introduced to Mr. Jones.

▆ Jones' testimony was admissible for another reason. On his cross-examination appellant denied (1) ever having seen Jones, (2) having visited Los Angeles with Eddie Smith, (3) having passed through Los Angeles except on the occasion of his trip to San Diego. Such denials were made to contradict the People's proof that (1) he had for days conspired with Eddie Smith and Carl Friend to rob the market manager; (2) on the fourth day of September he had with Smith and Friend visited a paint shop to see about painting appellant's automobile; and (3) with the same two com-

panions he had robbed the witness Shodall. It is thus seen that appellant's denials on cross-examination to which no objection was made were a positive contradiction of the prosecution's case. By reason thereof they were a proper foundation for impeachment by such testimony as that given by Jones. (*People* v. *Westek, supra.*)

■ Furthermore, appellant's denials raised not only the question of his own credibility but as well that of Carl Friend who testified that he had met appellant 10 years before the trial of this action in a prison in Oklahoma; had gone with him about September 1 from Vacaville to Los Angeles; had for "several days previous" to September 5 talked about going to the market, and had with appellant in the latter's car visited the market on Sunset Boulevard on September 4, and again on the morning of September 5, 1947. Jones' testimony served to prove appellant's familiar association with Smith before, as well as after, the robbery and was a contradiction of appellant's testimony that he did not even know Eddie Smith.

■ Finally, appellant made no objection to Jones' testimony at the trial, but actually developed it by his cross-examination and made no motion to strike it. The objection cannot be made for the first time on appeal. (*People* v. *Owens,* 123 Cal. 482, 490 [56 P. 251].) The precise ground of objection to evidence must be made at the time of its offer. (*People* v. *Sellas,* 114 Cal.App. 367, 378 [300 P. 150].)

THE MOTION FOR A NEW TRIAL WAS PROPERLY DENIED

■ The ground urged for a new trial was new evidence which appellant claims could not have been discovered with reasonable diligence prior to the close of the trial. The new evidence was the testimony of one Alice Dickey who in September, 1947, resided at 931 North Wetherly Drive, Hollywood, where she lived with one Hudgins as his wife and was known to her landlady as Mrs. Hudgins, but to others as Mrs. Dickey. Friend had testified that he was at the Hudgins house on September 2d and 4th; that on the latter day the group discussed the proposed robbery; that Mrs. Dickey had a 5-year-old daughter with her at the time; also, that after the robbery the three men returned to Hudgins' place.

That Mrs. Dickey could have been discovered prior to the close of the trial by the exercise of reasonable diligence is demonstrable. She moved into the Wetherly Drive house in July, 1947, and remained there until the following January.

She then departed to other quarters and left her new mailing address. She resided in Los Angeles in May, June and July, 1948, while this action was on trial. During that time appellant's sister visited and told Mrs. Dickey that she was in that city attending the trial. The witness told the sister that she had never seen Clyde at her house. The record shows that the case was submitted on May 20, 1948, on the transcript of the preliminary trial and other evidence. It was resumed on June 18 when, after evidence had been taken, it was continued to July 6. On July 7, defendant was found guilty. Miss Lindsey saw Mrs. Dickey before July 4, 1948.

The motion for a new trial was filed July 8, 1948, on the ground of newly discovered evidence and the other statutory grounds. No affidavit of either appellant or of his attorney was presented in support of it. The motion was argued on July 16 and decision thereon and sentence were continued from time to time until October 6, 1948. But not until September 20 did appellant present Mrs. Dickey. His excuse for not having found her in time for the trial was that her true name was not known.

But Miss Lindsey's conversation with her was before July 4th. She told Mrs. Dickey the latter's name had been brought into the case and the witness told Miss Lindsey all she knew; neither herself nor Hudgins had a child; she had never met or seen appellant and any testimony to the contrary was untrue. That conversation was about three months prior to the presentation of Mrs. Dickey to give her testimony in support of the motion. She testified that she recalled no night in September, 1947, when appellant and his two companions played poker in her home with Hudgins; that she never knew Carl Friend or Eddie Smith. She admitted her absence from home while she took a trip to San Francisco between the 4th and the 6th of September, 1947, but testified that Hudgins was with her.

Not only was appellant not diligent in discovering Mrs. Dickey and in advising the court what her testimony would be but the motion was itself insufficient in that no affidavit of appellant or of his attorney was attached thereto or presented prior to the argument on July 16. To warrant the granting of a new trial on the ground of newly discovered evidence the supporting affidavit must show that the accused did not know of the existence of the "new evidence" at the time of the trial or that he could not by the exercise of reasonable diligence have discovered it. (*People* v. *Urquidas*, 96 Cal.

239, 241 [31 P. 52]; *People* v. *Buck*, 46 Cal.App.2d 558, 568 [116 P.2d 160]; *People* v. *Farber*, 19 Cal.App.2d 189, 192 [64 P.2d 1138].) No such affidavit having been attached or duly presented, there is no basis for granting a new trial unless it be found in the testimony of Mrs. Dickey. Appellant's attorney did not talk with her until a few days prior to her appearance in court, more than two months after the submission of the motion. By reason of Miss Lindsey's efforts on behalf of her brother it was reasonable inference that she imparted to appellant or his counsel the information obtained by her concerning Mrs. Dickey's knowledge of the persons present in the Hudgins home during the first four days of September, 1947. If she disclosed such knowledge to appellant and it was unfavorable, his counsel would not of course, make use of it. If it was favorable to appellant and no action was promptly taken, he is foreclosed by his lack of diligence.

The judgment and the order denying the motion for a new trial are affirmed.

McComb, J., and Wilson, J., concurred.

The opinion was modified to read as above and a petition for a rehearing was denied March 23, 1949, and appellant's petition for a hearing by the Supreme Court was denied April 7, 1949. Carter, J., and Schauer, J., voted for a hearing.