[Crim. No. 4533.   Second Dist., Div. One.   Jan. 15, 1951.]

THE PEOPLE, Respondent, v. MELVIN C. KENNEDY, Appellant.

Walter L. Gordon, Jr., for Appellant.

Fred N. Howser, Attorney General, and Gail A. Strader, Deputy Attorney General, for Respondent.

WHITE, P. J.—In an information filed by the District Attorney of Los Angeles County, defendants Melvin C. Kennedy, Elbert Mack, and John Foster were accused in Count I of the crime of robbery, and in Count II of the crime of kidnapping for the purpose of robbery, both offenses allegedly committed on January 13, 1950.

Following pleas of not guilty and after appropriate waivers of a jury, the cause proceeded to trial before the court. Pursuant to stipulation, the case of the prosecution was submitted on the transcript of the testimony adduced at the preliminary examination with a reservation by both prosecution and defense that either might introduce additional evidence.

At the trial additional evidence was introduced by the People and all defendants. The court found each defendant guilty as charged in both counts of the information and found the robbery to be of the first degree.

From the judgments of conviction, defendant Kennedy alone prosecutes this appeal.

Epitomizing the facts in a light most favorable to the prosecution as we are required to do following a conviction, the record reveals that on the afternoon of the date charged in the information, one Morris E. Hoier was employed as a truck driver for the Simon Levi Distributing Company in the city of Los Angeles and was driving a truck loaded with liquor on his usual route.

At approximately 2:15 p. m., as Mr. Hoier stopped his truck to make a delivery, defendant Elbert Mack approached the truck. He was armed with a pistol which he pointed directly at the driver and commanded the latter to "Get in and drive." Complying with the order, Mr. Hoier drove on with the defendant Mack, and under the latter's direction the truck was driven a short distance and pulled into a lot opposite the Jefferson High School. The driver was then ordered out of the truck and, accompanied by defendant Mack, walked to Compton Boulevard, where defendant John Foster was waiting with an automobile. In obedience to orders from defendant Mack, Mr. Hoier entered the automobile with defendant Foster. Defendant Mack then gave his pistol to defendant Foster who drove around the immediate area for

approximately 30 or 35 minutes during all of which time defendant Foster "held the gun on" Mr. Hoier.

Thereupon the latter was permitted to leave the automobile, told to walk in front thereof and not to look around.

At the time Mr. Hoier was taken from his truck he observed a third man get out of the aforementioned Foster automobile. Mr. Hoier however was unable to observe closely the features of this third man and unable to identify him.

During the time that Mr. Hoier was being driven around by defendant Foster, the liquor truck was taken by defendant Mack to the residence of defendant Kennedy where the latter was waiting. The cases of whiskey were unloaded from the truck by defendants Mack, Kennedy and one Murphy Franklin. Defendants Mack and Kennedy then left in the empty truck with defendant Mack doing the driving. The aforesaid Mr. Franklin followed them in his automobile and after they had abandoned the truck on a street, returned them to defendant Kennedy's residence.

Later that day the liquor unloaded from the truck was sold to a Mr. Gutierrez, a used car dealer. Practically all the negotiations with respect to the sale of the liquor were carried on by defendant Kennedy, and a check in payment for said liquor was made to the order of defendant Kennedy in the sum of $330. On the check were written the words "Refund on Chevrolet." Mr. Gutierrez testified that the foregoing words were placed on the check at the suggestion of defendant Kennedy so that "he could get it cashed faster."

The sole ground urged by appellant for a reversal of the judgment is that "the evidence in its entirety is wholly insufficient to support the judgments of conviction."

From a reading of the foregoing factual narrative it is at once apparent that the evidence, insofar as it affects appellant, is circumstantial. ▮ However, the law recognizes no distinction between direct and circumstantial evidence in the degree of proof required. A conviction may be had upon evidence of either the one character or the other. All that is required is that the evidence, whether direct or circumstantial, shall be sufficient to establish guilt beyond a reasonable doubt in the minds of those charged with the duty of acting conscientiously upon it. Because circumstances very largely control the conduct of people in the most important affairs of life, it is said that circumstantial evidence may be as conclusive in its convincing force as testimony of direct witnesses to the overt act. ▮ And when circum-

stances are such as to exclude any other reasonable theory than that of guilt of the accused, they will justify a conviction.

In the case at bar the record discloses circumstances which in our opinion are incompatible with innocence. According to the testimony of Murphy Franklin, during the time that Mr. Hoier was being held up, appellant was standing in the driveway of his home where he remained for about a half hour until defendant Mack drove up with the victim's truck. Appellant then requested the witness Franklin to move his car so that defendant Mack could bring the truck in. After the truck was unloaded, Mr. Franklin, at the request of defendants, followed them in his car to where the liquor truck was abandoned, and then returned the defendants to appellant's home. It was appellant who directed defendant Mack where to leave the liquor truck. The question naturally arises as to why defendant Mack should bring the liquor truck directly to appellant's residence without a prior arrangement, pursuant to which appellant was admittedly awaiting its arrival, and subsequently disposed of the stolen merchandise. The fruits of the crime were sold to a long-time acquaintance of appellant, the latter negotiating for the sale. The check in payment therefor, in the sum of $330, was made payable to appellant. Written on the check were the words "Refund on Chevrolet car." The purchaser of the liquor was a used car dealer.

Another circumstance that commands attention is a conversation had between appellant and Police Officer Coppage of the Los Angeles Police Department, in the latter's office on January 20, 1950. On this occasion the officer read to appellant a statement made the previous day by defendant Foster, in which the latter implicated appellant as the "brains" and instigator of the crimes charged.

On that occasion the following ensued, as testified to at the trial by the aforesaid police officer:

"At that time I read his statement, the statement issued by Foster the day before, to Kennedy (appellant). I read it word for word to him and after I read the statement, I said, 'Kennedy, it looks to me like you are in a pretty tough spot. Do you want to tell me anything about it?'

"He says, 'Well, I will admit that I sold the liquor; I will admit that I was at 901 East 35th Street when the liquor was brought there; but I wasn't actually on the job.'

"I says, 'Kennedy, I don't believe you, frankly.' I said, 'I'll tell you what I'll do. I am going to have Mack brought

up here and I'm going to say nothing to Mack whatsoever. I want you to tell Mack to tell me the truth and if Mack tells me the same story that you do, I won't book you.'

"He says, 'All right.'

"When I brought Mack up there——. . . .

"A. I brought Mack up and said, 'All right, he is your witness; go ahead.'

"He said, 'Mack, I have told them and Foster has told them. You might as well tell them the truth.

"Mack hesitated for a few minutes and looked at me and kind of smiled and said, 'All right. If the rest of them want to talk, I can talk, too.'

"At that time Mack, in the presence of Kennedy, stated that Kennedy had called him on the phone on the afternoon of the 13th and told him he had a deal and that later Foster and Kennedy picked him up in his car, that they followed this truck around, and he said when the truck stopped, he walked up to the truck and he said, 'I didn't actually point the gun at the man.' He said, 'I had the gun stuck down under my trousers and opened my coat and showed him and said, 'Man, this is a holdup. If you get in, you won't get hurt.'

"He said, 'We drove down the street for eight or ten blocks, and I told him to drive in a housing project.' He said, 'At that time Kennedy and Foster came in Foster's car.' He stated, 'Kennedy got out of the car and walked around alongside of the truck. I took the driver off of the truck and put him in Foster's car and handed Foster the gun and told him to keep him for at least 30 minutes.'

"He said, 'Kennedy and I then went back to 901 East 35th Street. I drove the truck. We drove in there and unloaded the whiskey.' He says, 'Then we took the truck over and dumped it on 40th Place.'

"I said, 'Well, Mack,'—at that time I said, 'Mack, who followed you over there? How did you get back? Mack said, 'Well, will that boy get in any trouble?'

"I said, 'As far as I am concerned, he will get in no trouble.'

"He said, 'All right. It was murphy Franklin. I don't want to see him get in trouble because he had nothing to do with the whiskey and we promised him $5.00 to follow us over to where we dumped the truck and to bring us back to the house.'

"He said, 'Then we loaded the whiskey in the car and we went down to the used car lot at Jefferson and Washington and we sold the whiskey.' He said, 'We got a check for it.'

He said, 'I was with Kennedy when he cashed the check at the Bank of America at Washington and Broadway.' He says, 'We give Foster $20.00 one time and $30.00 the next.'

"I said, 'What did you do with the gun?'

"He says, 'I threw the gun away on San Pedro Street.'

"I said, 'Are you willing to take the officers out and show them where you threw the gun?'

"And he said, 'Yes.'

"I then turned to Kennedy and said, 'What about it?' And he said to Mack, *'You know I wasn't there when the driver was taken off the truck.'*

"And Mack replied, he says, 'You know you were there and if necessary, I can prove you were there.'

"I says, 'All right, Kennedy, you are going to be booked.' " (Emphasis added.)

It is significant that appellant made no denial of his participation in the crime other than to say that he was not present, "when the driver was taken off the truck."

Police Officer Wise testified on cross-examination that appellant stated to him, "That he went down and sold the liquor, that he hauled part of it in his car, that he got the check for the whiskey, and he had cashed the check for the whiskey, and that he had given the other two boys part of the money, that he had the check made out as a refund on the car, that he didn't think we could trace it."

Officer Wise also testified that appellant told him, "Yes, I knew they were going to pull the job," or some such words. That appellant admitted prior knowledge of the impending robbery was testified to by Officer Coppage as follows:

"Q. Then defendant Kennedy's statement to you at all times has been that he did not participate in the driving of the man or the robbing of the truck and that the most he ever did was cash this—I mean sell this liquor, is that right? A. With one exception. After he was accused of being with Mack at the time of the holdup, he then changed his story that he did meet Foster at the place where Foster told me that he had met him, on 27th and Central, prior to the holdup. Other than that, he still contended that he wasn't there on the actual holdup.

"Q. He wasn't there and didn't know anything about it, that they were going to do it? A. Ie didn't say anything about he didn't know anything about it.

"Q. What did he say? A. He said he knew they had a deal on."

From the foregoing, we are satisfied that the court was warranted in finding that appellant was actively engaged in advising and encouraging the commission of the crime (Pen. Code, §§ 31, 971), for the profit of himself and his companions, or at least one of them, to whom part of the fruits of the robbery were given. That the crime was committed in furtherance of a conspiracy in which appellant was actively engaged by way of advice and encouragement, though possibly not actively present when the victim was abducted and robbed.

Conceding, as contended by appellant, that his codefendants were accomplices, we are satisfied that the evidence in the case at bar meets fully the requirements of section 1111 of the Penal Code with reference to corroboration.

In the instant case, the court found appellant guilty on both counts of the information, one of which charged the crime of robbery, and the other accused him of the crime of kidnapping for the purpose of robbery. However, the defendants in this case committed no act of seizure or confinement other than that necessarily incident to the commission of robbery. Appellant therefore cannot be subjected to punishment for both offenses under the rule enunciated in *People* v. *Knowles*, 35 Cal.2d 175, 186, 187, 188, 189 [217 P.2d 1].

The judgment of conviction of kidnapping for the purpose of robbery is affirmed, and the judgment of conviction of armed robbery is reversed.

Doran, J., and Drapeau, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied February 8, 1951.