[Crim. No. 2881.   First Dist., Div. One.   Aug. 19, 1953.]

THE PEOPLE, Respondent, v. RAYMOND SANDOVAL et al., Defendants; LOUIS L. BENAVIDES, Appellant.

Thomas F. Poggi for Appellant.

Edmund G. Brown, Attorney General, Clarence A. Linn, Assistant Attorney General, and Wallace G. Colthurst, Deputy Attorney General, for Respondent.

WOOD (Fred B.), J.—To a charge of robbery, taking $580 from Andrew Ford on February 2, 1952, Raymond Sandoval pleaded guilty and testified on behalf of the state. To the same charge in the same information Louis Benavides pleaded not guilty, and was convicted of second degree robbery. He

has appealed from the judgment and from the order denying his motion for new trial.

He did not testify at the trial and does not question the sufficiency of the evidence to support the verdict. He makes five assignments of prejudicial error upon the part of the court during the course of the trial.

(1) *Did the court commit prejudicial error in allowing Ford, the prosecuting witness, to testify concerning his physical condition at the time of the trial, June 9, 1952? No.*

Over the objection that it called for the opinion and conclusion of the witness and was irrelevant and immaterial, Ford was allowed to answer the question "Are you under a doctor's care at the present time as a result of the injuries you received on February 2nd?" He answered, "I still go to the hospital and take outside hospital treatment." The question was relevant to the issue of force or fear, if any, involved in the commission of the alleged robbery. (Pen. Code, § 211.) The witness was competent to testify concerning the facts elicited. Moreover, he had previously stated without objection, "I have received outside patient treatment since then [February 7th, when he left the hospital]."

(2) *Did the court erroneously summarize the evidence and thereby commit prejudicial misconduct? No.*

Ford testified that he met Sandoval and Benavides at a certain cafe. When it came closing time he understood them to say they would take him back to his ship or to his home. So he entered a car with them and was placed in the back seat. He tried to get out but they put him back in the car and he "passed out." The next thing he remembered was fighting near some railroad tracks. He was not certain whether he was fighting both Sandoval and Benavides or only one of them. He remembered being struck by some one. He tried to defend himself but it did him no good. Upon cross-examination defendant's counsel sought to get Ford to say or to admit that he did not remember being hit, that he inferred he was hit because he was badly bruised when he woke up in the morning by the side of the railroad tracks. In response to a series of such questions Ford said he did not know which of the two men struck him, nor how many blows; he passed out in the car; the next thing he remembered was standing on a railroad track and fighting; he remembered squabbling and fighting with them; couldn't say whether "he hit me"; asked "You don't remember getting hit, do you?" he said, "Yes, I can say I got hit because my eyes were all black and blue and my face

all scratched up." He gave similar answers to similar questions several times repeated. Asked if he actually remembered the blows, he said "I couldn't say how many there was before I went down but I do remember hitting the cross-ties . . ." Asked by the court, "Do you remember whether somebody hit you?" he replied, "Yes, I remember him hitting me, sir."

Then the following ensued: "Q. [by defendant's counsel] You don't actually remember anybody hitting you, do you? A . . . I remember him hitting me." Mr. Cox: "I object to that question on the ground it has been asked and answered. Mr. Parrish: Oh, no, it hasn't. The Court: It has been asked and answered. That isn't what he said. He said he remembered somebody hitting him and he said that half a dozen times this morning and this afternoon, particularly on cross-examination." Defendant's counsel then said, "With all due respect to your Honor, I take objection to your summation of the evidence and I don't think it is correct." The court sustained the state's objection.

We think the court gave a fair summary of this witness' testimony in response to these questions. Some of the answers were argumentative, but so too were the questions, and it does not appear likely that further repetition of the questions would have produced different answers than those already given. Moreover, the very question under consideration brought forth the answer "I remember him hitting me." Besides, Ford appears to have been a witness who was none too able to express himself. He had but a fourth or fifth grade education and defendant's counsel later said of him "This type of man will say yes to anything if you give him a question that calls for yes or no." In such a case, the trial court committed no abuse of discretion in curtailing further exploration of the subject with this witness. In his instructions, the trial judge advised the jury to disregard any ruling or any language used by him that might have seemed to indicate his opinion as to any question of fact, concluding in respect thereto that the jury "must determine for yourselves all questions of fact, without regard to any opinion you may suppose the judge of this Court may have or entertain." Finally, there was no real conflict in the evidence on the question whether or not Ford was hit as an incident to being robbed. Defendant did not testify but in a signed statement he gave the police, which was read at the trial, he said that Sandoval took Ford over near a ditch, that defendant saw Sandoval hit

Ford and heard Ford groaning while being hit and that later Sandoval told defendant he kicked Ford.

■ Defendant also claims that the trial court misconstrued certain of the testimony of Anita Valenzuela, a waitress at the cafe attended by Ford that evening. Asked by the district attorney if Ford talked with Benavides, she said "I guess he did. I think so." Then the following ensued: "Q. You think so, is that your answer, ma'am? A. I guess he did talk to them. I didn't see him though. The Court: When you say 'you guess,' you mean that is your best memory? The witness: Yes, that is the best that I can remember. Mr. Parrish: I think the answer should be stricken on the ground it is pure speculation. She says she didn't see him talk to anybody. The Court: Objection overruled. Mr. Parrish: If the record shows that she didn't see him talk to anybody would you still make the same ruling? That is the record, Judge. The Court: She said she guessed that she saw him talk to him and then I asked her if she meant by that, that that was her best memory and she said yes. Mr. Parrish: Well then she said, 'I guess so, I didn't see him talk to anybody.' The Court: Well the jury will judge the testimony of the witness."

We see no error in this. Witnesses now and then use such expressions as "I think so," "I guess so," "I am not sure," meaning it is thus and so "to the best of my recollection." (See *Weingetz* v. *Cheverton,* 102 Cal.App.2d 67, 73 [226 P.2d 742].) It is proper for the trial court to ascertain the intent with which a witness uses such an expression. That is what the trial court did in this case.

■ (3) *Did the court commit prejudicial error in permitting Ford to testify as to what his doctors had told him? No.*

Upon cross-examination defense counsel questioned Ford at some length concerning advice given Ford by the doctors at the hospital relative to his drinking habits and admonition against drinking. Upon redirect the district attorney asked him: "Mr. Ford, you told counsel that the doctors at the Marine Hospital told you to quit drinking for a while? A. Yes, they told me to quit drinking, sir. Q. And that if you drink in your condition you might go down like a vegetable or words to that effect? A. Yes, sir. Q. Didn't they tell you that was because you had gotten a fractured skull?" The last question was objected to as calling for an opinion and conclusion, as hearsay, as leading and as incompetent.

Upon the overruling of the objection, the witness answered "Yes."

We find no error here. This was simply clearing up and clarifying a situation opened up on cross-examination.

■ (4) *Did the court commit prejudicial error in advising a juror that all of the statements of the witness Valenzuela could be considered as evidence of the truth of the matter contained in them even though the district attorney had sought to impeach the witness by showing prior inconsistent statements? No.*

Asked if while they were in the cafe that evening she saw Sandoval talking to Benavides, Valenzuela said she wouldn't know how to answer that because everybody was talking to one another, she couldn't say whether they were together or not. Asked if she saw Sandoval talking to Ford, she said "No." The district attorney, claiming surprise, reminded her of a conversation she had with him and Inspector McDonough in which she said that Sandoval and Benavides left the cafe at closing time, said they were going to take him [Ford] back to the ship; and that she (Valenzuela) told Benavides "You had better take this man [Ford] back to the ship," and that Ford, Sandoval and Benavides left the cafe together. She confirmed having so stated on that occasion. Asked, "is that true that you told us that?" She said "Yes." Asked, "and it is corrected now?" She answered "Yes." Thereby she confirmed, also, the truth of her out-of-court statement making it a statement in court under oath.

As this witness left the witness stand, a juror asked if the jury should take the testimony pertaining to the impeachment as a part of the trial, to which the court responded: "All of the testimony is to be taken into consideration in determining the case. However, if the witness is not impeached you don't have to consider the impeachment. However, certain statements she was questioned about, she said that she made and that they were true, as far as the record goes at this time you may take those into consideration, not as impeachment but as her testimony after her recollection was refreshed."

Defendant's counsel objected to this as an incorrect statement of the law respecting impeachment. The court correctly ruled thereon: "when she said that certain things were true the jury has a right to take them into consideration."

■ (5) *Did the court commit prejudicial error in allowing in evidence a written statement of the defendant? No.*

Defendant's objection is based upon the claim that the statement was exculpatory, not an admission.

This statement, signed by defendant, recited that he arrived at the cafe about 10 p.m.; met Sandoval there; observed Ford, who was drunk; left as the place closed; the waitress told him to take Ford home; Sandoval wanted to come along; he took his father's car because his own would not go; defendant drove out to East Oakland; Ford got sick, so Sandoval took him out of the car, hit him with his fists, came back without Ford and gave defendant $200 from Ford's wallet, saying to defendant, "that is your part." The statement went into considerable detail but enough has been narrated here to demonstrate that in content it qualified as an "admission" by defendant that he participated significantly in the alleged robbery. It also corroborated much of the other evidence in the case.

The judgment and the order denying a new trial are affirmed.

Peters, P. J., and Bray, J., concurred.