[Crim. No. 3222. First Dist., Div. Two. Nov. 20, 1956.]

THE PEOPLE, Respondent, v. STEVE SORRENTINO
et al., Appellants.

Edises, Treuhaft, Grossman & Grogan, Bertram Edises, Morris M. Grupp and Emmet F. Hagerty for Appellants.

Edmund G. Brown, Attorney General, Clarence A. Linn, Assistant Attorney General, Raymond M. Momboisse, Deputy

Attorney General, Thomas C. Lynch, District Attorney (San Francisco) and Norman Elkington, Assistant District Attorney, for Respondent.

## Appeal of Bigarani

KAUFMAN, J.—This is an appeal from a judgment of conviction after jury trial, on each of five counts of an indictment. The first count charged appellant Edward Bigarani and Frank Mendes, Steve Sorrentino and Edmund Lindsay with conspiracy to violate the provisions of section 211 of the Penal Code (robbery). The remaining counts charge all appellants with certain armed robberies that took place on February 18, 1955, at 185 Post Street, San Francisco. Bigarani appeals also from the order denying a new trial and from orders denying his motion to set aside and dismiss the indictment. Appellant states that he is appealing in action 51169 for the purpose of including in the record here the proceedings had in action 51169, prior to the dismissal of the indictment in that action. ■ As to the attempt to appeal from the dismissal of indictment 51169, it may be said at the outset, that appellant cannot appeal from a decision in his favor, not being aggrieved nor prejudiced thereby. (3 Cal.Jur.2d 566, § 110.)

On February 18, 1955, at about 11 o'clock in the morning, the jewelry establishment operated by Paul de Vries, Inc. at 185 Post Street, San Francisco, was robbed of jewels valued at between $100,000 and $300,000, and $3,000 cash. The two armed robbers were later identified by employees of the establishment as Mendes and Sorrentino, two of the appellants. A postman who entered the premises during the course of the robbery, was also robbed. Lindsay, who was charged as a defendant, but not placed on trial, and who testified before the grand jury, acted as a lookout. It is admitted that appellant Bigarani was not present while the robbery was taking place, and the theory upon which he is held is that he conspired with one or more of the other appellants prior to its commission by encouraging or advising them to commit the crimes.

It is appellant's first contention that each count of the indictment is void for failure to inform appellant of the nature and cause of the accusation against him. The indictment charges appellants with a "felony, conspiracy (violation of Pen. Code, § 182), committed as follows," that Mendes, Bigarani, Sorrentino and Lindsay on or about the 18th day of February, 1955, at the City and County of San Francisco, State of California, did conspire and agree with each other

and with other persons to violate the provisions of section 211 of the Penal Code of the State of California. The first overt act is then alleged, that "Thereafter, in the City and County of San Francisco, in pursuance of the object of said conspiracy, and on February 18, 1955, Frank Mendes entered the premises at 185 Post Street." The second overt act, that in pursuance of the object of said conspiracy on that same date and at that same place, Steve Sorrentino entered the premises at 185 Post Street. Finally, the count contains an allegation that "at the time of the commission of said offense, each of said defendants was armed with a deadly weapon, to wit, a pistol."

■ Count I of the indictment obviously meets the test of section 950, Penal Code, in that it sets forth the acts constituting the offense in ordinary and concise language such as would enable a person of ordinary understanding to know what is intended. It is well established that an indictment drawn in this fashion is not a violation of due process. (*People* v. *Gordon,* 71 Cal.App.2d 606 [163 P.2d 110].) In *People* v. *Black,* 45 Cal.App.2d 87, 97 [113 P.2d 746], it was said that "the gist of the crime of conspiracy is the unlawful agreement to commit any crime accompanied by an overt act in furtherance of such agreement."

In *People* v. *Roberts,* 40 Cal.2d 483, 486 [254 P.2d 501] appellant and another were charged by the first count of the information with conspiracy to violate section 11500 of the Health and Safety Code, and in the other three counts with illegally transporting, selling, furnishing and giving away, and possessing heroin. Appellant contended that the first count was insufficient because it did not specify the particular act, such as transporting, selling, or possessing, that was the object of the conspiracy. The count was held to be sufficient, the court stating that "Notice of the particular circumstances of the offense is given not by detailed pleading but by the transcript of the evidence before the committing magistrate (or the grand jury); defendant is entitled to such transcript under section 870 (or section 925) of the Penal Code. (Citations) . . . The information alleges a single conspiracy with the object of accomplishing one or more types of violation of section 11500, and there was evidence which tends to show that several objects of this single conspiracy were accomplished."

■ As to the remaining counts of robbery in the indictment, they clearly meet the requirements prescribed by sections 951 and 952 of the Penal Code. These counts each

allege that appellants committed a felony, robbery (violation of Pen. Code, § 211). Count II alleges that they "did rob John De Leeuw of lawful money of the United States," Count III, that they "did rob Paul DeVries of the sum of $50.00 lawful money of the United States, and one ring;" Count IV, that they "did rob William Vossbrinck of personal property entrusted to his care, to wit: United States mail; Count V, that they "did rob Paul De Vries, Inc., a corporation of diamonds, jewelry and lawful money of the United States." Each count contained allegations that appellants were armed with a deadly weapon at the time of commission of the offenses. In *People* v. *Israel,* 91 Cal.App.2d 773 [206 P.2d 62], the phrase "did rob" was attacked as being insufficient to give notice of the offense for which defendants must stand trial, and it is similarly attacked in this case. The court there, while it did not commend the form of the charge, held that it sufficiently apprised appellants of the offense with which they were charged, and was a substantial compliance with sections 951 and 952, Penal Code.

Appellant Bigarani maintains that he was deprived of effective representation of counsel upon his arraignment. The trial on the prior indictment, number 51169, had been set for August 15, 1955. The court, the district attorney, and Mr. Hagerty, counsel for appellants Sorrentino and Mendes apparently all knew that Mr. Grupp, counsel for Bigarani, would be absent from the city in the interim. While action number 51169 was still pending, the grand jury on August 1, 1955, voted a new indictment, 51564, on which the present action is based. On August 5, 1955, appellants were all called up for arraignment and for plea to this new indictment. The court, knowing of Mr. Grupp's absence from the city, appointed Mr. Hagerty, counsel for Mendes and Sorrentino, to represent Bigarani for the purposes of arraignment. The court made it clear that the trial would begin, on one or the other of the indictments on August 15, and no later. The court took under submission a motion by Mr. Hagerty to dismiss the indictment in 51169, which he stated would be decided on August 15. The district attorney assured counsel for appellants that the new indictment was based upon the same evidence as 51169. When Mr. Hagerty asked for a week to plead to it, the court gave him to August 8, or three days. He protested that he didn't know where to get in touch with Mr. Grupp in the meantime, but since the court insisted on August 8, he finally assented.

On August 8, 1955, when Bigarani was asked for his plea, he stood mute. The district attorney pointed out that Mr. Grupp, Bigarani's counsel, was not in court, and that his counsel should have an opportunity to make any motions that were proper in regard to the indictment. The court replied that he accepted Mr. Hagerty's statement that he represented Mr. Bigarani at the prior hearing and at the present one, and said "That is true, isn't it, Mr. Bigarani?" He answered, "Yes." Prior to this, Mr. Hagerty had stated that he renewed his motion to dismiss the indictment on the grounds that defendants were not properly arraigned nor brought to trial within the 60-day period on behalf of all the defendants which he represented, Sorrentino and Mendes, and added, "I believe I'm standing in for Mr. Bigarani at this time, because of the absence of Mr. Grupp." Mr. Hagerty said to the court, "You recall that last week you appointed me to represent him." The court said, "Well, Mr. Bigarani agreed to it as I recall," and Bigarani answered, "That's right." The court then asked for the pleas, and Mr. Hagerty made a motion for continuance. The court asked that he have the pleas before any more motions were made. Mr. Hagerty responded, that he would like a continuance before the pleas were entered to further study the matter and consult with Mr. Grupp. The court replied that since all of them had been studying this transcript for six weeks, he should know it by heart. Mr. Hagerty said that his ideas might differ on it from "opposing counsel's," but the court said, "Well, you represent them" and Mr. Hagerty answered "That is why I am making the motion." Pleas of not guilty were entered for appellants.

The trial court, at this hearing, acted on Mr. Hagerty's motion and dismissed Indictment 51169.

The argument that appellant Bigarani was denied effective representation of counsel, appears to be based on the assertions of Mr. Grupp, that he, the court and the district attorney all knew, since sometime in July, 1955, that the testimony of Lindsay before the grand jury was perjured, that this was the testimony on which the conspiracy charge was based, and that if Mr. Grupp had been in the picture, he could have attacked the indictment on this ground before trial. Mr. Grupp represented Bigarani when the trial opened on August 15, 1955, and made a motion to amend the indictment to state Bigarani's name correctly. Mr. Grupp did not ask the court for permission to withdraw the plea in order that he might then attack the indictment on the above ground, nor did he

raise the point that his client had been deprived of his right to effective counsel.

Undoubtedly a defendant may waive the aid of counsel if he does so with a clear understanding of what he is doing. (*In re Berry,* 43 Cal.2d 838, 846 [279 P.2d 18].) The proceedings outlined above show that there was a basis for the court's belief that there was an understanding that Bigarani was to be represented in the absence of Mr. Grupp by Mr. Hagerty. The argument appears to be that Mr. Grupp could have represented appellant *more* effectively. The cases hold, however, that a defendant is entitled to *effective* representation of counsel, and no one can question that he was intelligently and vigorously represented here by experienced counsel. We know of no holding that a defendant is entitled to the *most* effective representation of counsel.

Since Mr. Grupp made no attempt to make use of the knowledge which he then had as a basis of an attack on the indictment, by requesting permission of the court to withdraw the plea in order to make such motion, it must be held that any objections on the basis of irregularity of the proceedings have been waived. (*People* v. *Ahern,* 113 Cal.App.2d 746, 750 [249 P.2d 63].) Since Mr. Grupp made no attempt to use the information he had to request a withdrawal of the plea, we fail to see how Mr. Hagerty's representation of Bigarani was prejudicial to his rights, even if Mr. Hagerty did not have the knowledge of the alleged perjury possessed by Mr. Grupp. (See *People* v. *Stroble,* 36 Cal.2d 615, 627, 629 [226 P.2d 330].) The cases of *Glasser* v. *United States,* 315 U.S. 60 [62 S.Ct. 457, 86 L.Ed. 680] and *People* v. *Lanigan,* 22 Cal.2d 569 [140 P.2d 24, 148 A.L.R. 176], cited by appellant are distinguishable, for in those cases the complaining defendant was represented throughout the trial of the case by a codefendant's counsel who was forced upon him by the court in situations where the codefendant's interests were possibly conflicting. Here, Mr. Grupp represented Bigarani throughout the trial, hence he had the undivided assistance of his counsel during trial.

It is urged that appellant was deprived of due process within the meaning of the Fourteenth Amendment because the indictment was based upon perjured testimony . He contends that insofar as appellant Bigarani is concerned, his indictment was based solely upon the testimony of Lindsay, whose testimony before the grand jury, he asserts, was perjured. Lindsay did not testify at the trial. Appellant bases

his charge of perjury on some remarks exchanged between the district attorney and present counsel at an earlier trial of Bigarani on a charge of receiving stolen property. The statements referred to are no part of this record on appeal. The record herein is completely devoid of any facts showing that perjured testimony was knowingly used to procure the indictment of this appellant. ■ Facts outside the record cannot be considered on appeal. (*People* v. *Henderson,* 121 Cal.App.2d 298, 300 [262 P.2d 871] ; *People* v. *Collins,* 117 Cal.App.2d 175, 184 [255 P.2d 59].) ■ Furthermore, as noted earlier, the failure to make any attempt to have the indictment set aside on this ground, constituted a waiver of the right to do so. (*In re Berry,* 43 Cal.2d 838, 844 [279 P.2d 18] ; *People* v. *Gilliam,* 39 Cal.2d 235, 341 [246 P.2d 31].) Appellant has shown no prejudice, since the allegedly perjured testimony was not introduced at the trial. If his conviction can be upheld, it must be based only on the evidence received during trial. The numerous authorities cited by appellant holding that a conviction cannot be upheld which is secured through the use of perjured testimony knowingly presented by the prosecution, are not here in point, for appellant admits that the allegedly perjured testimony was not introduced at the trial.

Appellant maintains that the evidence was insufficient to justify his conviction on the charge of conspiracy, or on the four counts of robbery.

The record shows that in November 1954, Mendes moved into a furnished apartment in a house on California Street in San Francisco, under the alias of Joe Costa. In moving, he used the automobile of Cardinelli, who was a friend of Bigarani. Although the apartment had been vacant for months, it had not been advertised, and Mendes said he learned of it through friends. He resided at this apartment until January 31 or February 1, 1955. On February 1 or 2 and on February 5 telephone calls were placed by Bigarani to Evergreen 6-7507, the telephone number of Cardinelli's fiancee at the California Street residence, and which phone number Cardinelli had given Bigarani. Mendes did not have a phone in his apartment. On February 1, 1955, Mendes and Sorrentino, using the names Costa and Sullivan, rented an apartment at 1555 Oak Street, together with Lindsay who used the alias, Murray. They told the landlady that they were commercial fishermen just back from Alaska.

On February 16, 1955, Sorrentino and Lindsay rented an

apartment in Pittsburg under the aliases of Sullivan and Lowry. The same day Mendes, under the name of Willis, checked into Room Number 5 at the El Rancho Hotel in Antioch. That day two telephone calls were placed from that room to the Embassy Hotel in San Francisco. Appellant Bigarani lived at this hotel. Bigarani admitted that he had met Mendes three times prior to February 18, 1955, the date of the robbery, the first occasion being about February 3 or 4, and that he had given him his address and phone number. They met in downtown bars. Mendes, he said told him that he was a jewelry salesman, and Bigarani told him he knew quite a few jewelers. He said that he asked him if he might know somebody who would buy jewelry if he got something that was attractive, and Bigarani told him that he'd try.

On February 17, Sorrentino and Mendes told their landlady that they would be leaving town on the 18th and would be gone for three or four days. On the 18th, the robberies previously described were committed. ■ There can be no question as to the sufficiency of the evidence to sustain the convictions of Sorrentino and Mendes on the robbery counts, since they were positively identified by several witnesses and caught with part of the loot.

At 12:30 on the day of the robbery, Mendes telephoned Bigarani at his hotel and Bigarani immediately went to the Oak Street apartment of Mendes. He and Mendes took certain packages to Bigarani's room at the Embassy Hotel. Bigarani then phoned Dr. James Brumback, then went to the doctor's office. Dr. Brumback returned to the Embassy with Bigarani. They took part of the jewelry to the Day and Night Branch of the Bank of America where Dr. Brumback placed it in his safety deposit box. Bigarani took a suitcase containing part of the jewelry to a girl friend's apartment where he hid it.

The police traced the robbers to the Oak Street address before 6 p. m. on the day of the robbery, since a handkerchief had been dropped at the scene bearing Sorrentino's laundry mark. Shortly thereafter Lindsay was picked up when he returned there, and some hours later, Sorrentino. It was learned that Mendes had rented an automobile, and he was apprehended south of Salinas. Some $7,420 cash and jewelry were found on his person, and a .32 calibre automatic was in the glove compartment of the car. He told the officers that he was getting out of the country as fast as he could.

On Saturday morning, February 19, 1955, the police went to Bigarani's room at the Embassy Hotel. They found a .25

calibre gun in his possession. In his automobile they found an imitation leather bag inside a paper bag. When he was shown this bag and told that it was used in the robbery he became very excited and claimed to have no knowledge of it, saying that someone must have left it there the day before. He would not say who that someone was. When told that the robbers had been caught, he asked to see the newspaper. After reading it, he said he would help police recover the stolen property. He also said that if the police had not taken his gun, he would have blown his brains out. Bigarani took them to the girl friend's apartment where the suitcase of jewelry was recovered. He did not wish to disclose where the remainder was hidden, first offering the police a $10,000 bribe. When they declined the bribe, he took them to Dr. Brumback's office. On Monday, February 21, the safety deposit box was opened. Jewelry still in the de Vries envelopes and other jewelry in envelopes from the Hotel Embassy were found therein. There were also 12 or 15 bundles of money in denominations of twenty, fifty and one-hundred dollars.

Bigarani later told police that the bag discovered in his automobile had been used by Mendes to bring the stolen property to his hotel room. He said that after he had introduced Dr. Brumback to Mendes, there was a heated argument between them over the price. Again he said that the loot was to be sold and split between Mendes and Bigarani, that Dr. Brumback took only the diamonds, and that the old gold was to be kept by Bigarani. When he returned from the bank Bigarani gave Mendes some money. When asked how much, he held up five fingers. He said that he had then told Mendes to clear out, and when he went downstairs to drive him home, he saw Mendes' picture in the newspaper. He said that after he parted with Dr. Brumback at the bank, he had made no definite arrangement to meet the doctor again in regard to this transaction.

Both Mendes and Sorrentino were narcotic addicts and had prior criminal records.

It is well established that the existence of a conspiracy may be established by circumstantial, as well as direct testimony. Because of the nature of conspiracy, it is seldom possible to secure independent evidence of a formal agreement. It does not have to be shown that the parties actually came together to agree on a common plan, if there are facts and circumstances from which a jury could infer that they had a mutual understanding to commit a crime. (*People* v.

*Griffin,* 98 Cal.App.2d 1 [219 P.2d 519]; *People* v. *Robinson,* 43 Cal.2d 132, 136 [271 P.2d 865]; *People* v. *Steccone,* 36 Cal.2d 234, 237 [223 P.2d 17].) While many of the circumstances here may be consistent with the theory that Bigarani was known to Mendes as a receiver of stolen jewelry, they are also subject to the inference that he acted in the planning of the robbery. In February just prior to the robbery, there were admittedly three meetings between Mendes and Bigarani. Bigarani attempted to reach someone by telephone at the residence from which Mendes had just moved, early in February. ▮ While there must be some evidence of participation or interest in the conspiracy, which cannot be established simply by suspicion or association, the fact that defendants were frequently together is not irrelevant and may in some degree tend to establish a conspiracy. (*People* v. *Childs,* 127 Cal. 363 [59 P. 768]; 11 Cal.Jur.2d 252, § 30.)

▮ It is settled that when a person is shown to be in posssession of recently stolen property slight corroborative evidence of other inculpatory circumstances which tend to show guilt supports the conviction of robbery. (*People* v. *Vidal,* 121 Cal. 221 [53 P. 558]; *People* v. *Bonner,* 5 Cal.App. 2d 623, 631 [43 P.2d 343]; *People* v. *Swanson,* 120 Cal.App. 173 [7 P.2d 380]; *People* v. *Cataline,* 54 Cal.App. 36 [200 P. 1060].) In *People* v. *Swanson, supra,* one such inculpatory circumstance mentioned was defendant's participation in the sale of the stolen property. In the instant case the proceeds of the robbery were placed on display in appellant's room for inspection by Dr. Brumback, whom he immediately contacted. He admitted that a split of the proceeds was to be made between himself and Mendes. In *People* v. *Sandoval,* 119 Cal. App.2d 777 [260 P.2d 153], a statement by defendant that the party who robbed the victim handed defendant $200 telling him that was his "part," was held to qualify as an admission that defendant participated in the robbery. In *People* v. *Kennedy,* 101 Cal.App.2d 709, 712 [226 P.2d 359], the proceeds of the robbery were sold by appellant to a long time acquaintance, appellant negotiating the sale. This was considered a corroborative circumstance that he was a participant in the robbery, plus the fact that the men who actually staged the holdup drove the stolen truck and loot immediately to appellant's home. In the instant case, appellant was available at his hotel at 12:30 p. m. just after the robbery. He left immediately upon receipt of the call to transport the loot to his room with Mendes and then contacted Dr. Brumback.

In *People* v. *Braun,* 31 Cal.App.2d 593 [88 P.2d 728], strongly relied upon by appellant, where a murder was committed during the course of a robbery, association of appellant before and after the crime with the known perpetrators was held to be insufficient evidence of participation in the crime. There, however, no evidence was introduced showing that appellant had any fruits of the robbery in his possession at any time.

Bigarani told conflicting stories as to how he acquired the jewelry. One story was that the proceeds were to be split half and half between himself and Mendes. Then at trial he testified that Mendes brought the property to him only so that it might be stored over the week end in Brumback's safe deposit box. There was the discovery in Bigarani's automobile of the brown bag used in the robbery, and of which he first denied any knowledge. Later, he said the bag had been used by Mendes to bring the stolen property to his room.

There was also evidence of consciousness of guilt on the part of appellant, since he stated that he would have committed suicide if the officers had not taken his gun. He also admitted having flushed some of the diamonds down the drain after Mendes had left his room.

It therefore appears that there was sufficient circumstances of guilt in addition to possession of the stolen property to show appellant Bigarani's implication in the conspiracy, and therefore he is guilty of the robberies committed in pursuance of the conspiracy, even though he was not present during the actual commission of said robberies. (*People* v. *Harper,* 25 Cal.2d 862 [156 P.2d 249] ; *People* v. *Fratianno,* 132 Cal.App.2d 610, 628 [282 P.2d 1002] ; *People* v. *Brown,* 131 Cal.App.2d 643, 652 [281 P.2d 319].)

It may be said that while the division of the loot, and some of the guilty conduct of appellant Bigarani occurred after the actual commission of the robbery, it was evidence admissible against him, for as was said in *People* v. *Brown, supra,* page 656, "the conspiracy 'may, for various purposes, extend in point of time beyond the actual commission of the substantive crime, providing there is some evidence showing that subsequent activities of the conspirators were part of their scheme or plan.' (11 Cal.Jur.2d 223 and cases there cited.) Examples are division of the loot and payment for participation in the crime . . . and acts contemplating escaping punishment. (*People* v. *Tinnin,* 136 Cal.App. 301, 306 [28 P.2d 951.)"

We believe that the evidence pointed out above distinguishes this case from *People* v. *Howard*, 58 Cal.App. 340 [208 P. 1022]; *Dong Haw* v. *Superior Court*, 81 Cal.App.2d 153 [183 P.2d 724]; *People* v. *Zoffel*, 35 Cal.App.2d 215 [95 P.2d 160]; *People* v. *Collier*, 111 Cal.App. 215 [295 P. 898] and *Boyd* v. *Superior Court*, 113 Cal.App.2d 443 [248 P.2d 106], all discussed at considerable length by appellant.

Prejudicial error is alleged in the admission into evidence of the two telephone calls made from Bigarani's hotel room to Evergreen 6-7507, and the two telephone calls on February 16, 1955, placed from the Antioch motel room rented by Mendes to the Embassy Hotel where Bigarani lived. The telephone calls on February 1 or 2 and 5 by Bigarani to the residence where Mendes had lived up till February 1, would be admissible, since, although it might be of slight weight in view of the testimony that Bigarani's friend, Cardinelli, also lived there, tends to prove that Bigarani tried to contact someone at that residence on a date not long before the robbery. The call from Mendes on the day prior to the robbery to someone at the Hotel Embassy was a relevant circumstance. The Hotel Embassy was the residence of Bigarani. If he had resided with a family in a private residence, the fact that a call had been made by one of the robbers to that residence would have been admissible. Mendes had been given the hotel's phone number by Bigarani himself. Although numerous other persons resided at the hotel, and there is always the possibility that the call could have been directed to someone else, that argument would go to the weight of the evidence, not to the admissibility. The telephone company's records of these calls were properly admissible as records made in the regular course of business. (*People* v. *Vacarella*, 61 Cal.App. 119, 123 [214 P. 237]; Wharton's Criminal Evidence 691.) The records of the hotel, likewise, were admissible as records kept in the regular course of business (Code Civ. Proc., § 1953f).

The authorities cited by appellant are in regard to the exclusion of telephone conversations because of lack of identification of the speaker, are not here in point. Furthermore, it may be said that these calls are not the only evidence of some association between Mendes and Bigarani, for in the period of from February 1, 1955, up to the date of the robbery, Bigarani admitted to at least three meetings with Mendes. Counsel for Bigarani stipulated to the fact that the February 5th call was made to Evergreen 6-7507, and stated

that he had no objection to the introduction of the motel records showing the Antioch calls. He did not even object when the Embassy Hotel manager testified to the February 1st call, and only raised objection to the introduction of hotel records. It may therefore be said, that he had waived any objection he might have had to this testimony.

Appellant conplains of the refusal of the court to grant his motions to strike certain portions of the testimony. In some of these instances appellant had failed to object when such testimony was introduced, and he is therefore presumed to have waived the objection. Unless the question is such that opposing counsel cannot anticipate that the answer will be inadmissible, a motion to strike comes too late. (*People* v. *Williams*, 127 Cal. 212 [59 P. 581].) There was no prejudicial error committed in overruling an objection to a question where the answer was favorable to appellant. (*People* v. *Bigelow*, 104 Cal.App.2d 380, 386 [231 P.2d 881].) Other questions objected to tended to establish the friendly association between Mendes and Cardinelli and Bigarani. This tended to establish a link of communication between Mendes and Bigarani, and was therefore relevant.

No prejudice could have possibly resulted to appellant from the rulings of the court complained of on cross-examination of Bigarani. He was asked if anything Captain Lee had said on the witness stand was untrue. The district attorney said the question would be offered only as binding on Bigarani and not on the other defendants. Bigarani replied that "As pertains to me, I don't think he said any untruths about me." He was there given the opportunity to refute any conversations he had had with Captain Lee which were not correctly reported. Appellant's counsel on redirect fully developed the matter, by referring again to the district attorney's question, and quoting line after line of Lee's testimony to appellant, asking him if he had that portion of the testimony in mind when he gave this answer to the district attorney. Since appellant fully developed the matter on redirect which he claims was prejudicial (*People* v. *Darby*, 114 Cal.App.2d 412, 438 [250 P.2d 743]), no prejudicial error appears therefrom. Nor was error committed in sustaining objections directed to appellant by his counsel of which appellant had no knowledge. Such questions were certainly irrelevant. (*People* v. *Kynette*, 15 Cal.2d 731 [104 P.2d 794].)

 Finally, it is urged that prejudicial error was com-

mitted by the district attorney in his argument to the jury when he theorized as to what might have happened at the scene of the robbery if someone had offered resistance. There might have been shooting, he said, and someone might have been killed. He pointed out that a year before Inspector Bradley had been killed trying to arrest a robber, and that in this case Captain Lee might have been killed by Mendes or the "hopped-up" Sorrentino if they had been home when their apartment was raided, and that this was the sort of thing that the wise fellow, Bigarani did not wish to participate in.

In the present case there was no question but that the robbers were armed, and they both were admittedly narcotic addicts. It was clear that the district attorney was theorizing, and the jury must have so understood it. The language is not susceptible of the construction that any of these appellants had anything to do with the Bradley killing. For this reason, the cases cited by appellant are not in point. (*People* v. *Albertson,* 23 Cal.2d 550, 576 [147 P.2d 7] ; *People* v. *Anthony,* 185 Cal. 152 [196 P. 47] ; *People* v. *Derwae,* 155 Cal. 592 [102 P. 266].) It has been said that it is permissible for counsel "to illuminate his argument by illustrations which may be as various as the resources of his talents. He may refer to matters of common knowledge, not special to the case, and to well-known historical incidents." (*People* v. *Kynette,* 15 Cal.2d 731, 757 [104 P.2d 794].) Prejudice could not have resulted from the district attorney's theorizing on what might have been. Furthermore, the jury was clearly instructed that the statements and arguments of counsel were not evidence in the case, and must be disregarded where inconsistent with such evidence.

### Appeal of Sorrentino

Appellant Sorrentino has filed a separate brief devoted to the argument that he has been deprived of his constitutional right to a speedy trial. His motion to dismiss indictment 51169 was granted. Thus his constitutional right in regard to that indictment was protected. That indictment was dismissed on August 8, 1955. In the meantime on August 1, 1955, indictment 51564, the indictment on which he was tried and convicted, was returned. Indictment 51169 does not appear in the record now before the court, but from the discussion of court and counsel, it may be assumed that it was very similar to the prior indictment, and was based on the same evidence. Appellants were arraigned on August 5, 1955, on

the new indictment, three days prior to the dismissal of indictment 51169. They were brought to trial within fifteen days of the voting of the second indictment.

Appellant's basic argument is that he had a right to a discharge from custody before he could be again indicted. In view of section 1387, Penal Code, he cannot argue that a dismissal under section 1382 is a bar to another prosecution for the same felonies.

Appellant admits that there are cases wherein an indictment has been returned, charging defendant with the same crime that is pending against him on an information, and that it has been held that the fact that the indictment has been returned before the information was dismissed, did not affect the situation. (*People* v. *Grace*, 88 Cal.App. 222 [263 P. 306].) The case of *People* v. *MacCagnan*, 129 Cal.App.2d 100 [276 P.2d 679], also so holds. He maintains, however, that there is a distinction between cases where the first accusation is by indictment and the second by information or vice versa, and those where both accusations are by indictments. In *People* v. *Grace, supra,* it is said that there was ''no legal relation or connection between the information and indictment. Each was a separate proceeding authorized by statute and complete in itself.'' It is urged that the voting of indictment 51169 and 51564 were not such separate proceedings.

It appears to be well established in this state that two indictments returned at different times by the same grand jury charging the same offense and based upon the same evidence, are just as much separated proceedings as if one accusation was by indictment and the other by information. (See *People* v. *Follette*, 74 Cal.App. 178 [240 P. 502], and authorities there reviewed. And see *Stern* v. *Superior Court*, 78 Cal.App.2d 9, 14 [177 P.2d 308].)

It is conceivable that this power to return new indictments for the same offense might be abused. For example, if a new indictment were returned on the fifty-ninth or sixtieth day, and the prior one dismissed, and that process was repeated again and again, undoubtedly the constitutional right to a speedy trial would be nullified. (See *People* v. *Godlewski*, 22 Cal.2d 677 [140 P.2d 381].) But no such abuse is shown in the present case.

As provided for in rule 13 of the Rules on Appeal, appellant Mendes has filed no briefs on his own behalf, but has adopted the briefs of appellant Bigarani. The points in-

volved in the Mendes appeal have already been discussed in the appeal of his codefendants.

We are satisfied from the record that the evidence is sufficient to support the judgment of conviction as to all appellants and that no prejudicial error appears in the record before us.

Judgment of conviction affirmed.

Dooling, Acting P. J., and Draper, J. pro tem.,* concurred.

A petition for a rehearing was denied December 5, 1956, and the petitions of Steve Sorrentino and Adolph Edward Bigarani for hearings by the Supreme Court were denied December 19, 1956.

*Assigned by Chairman of Judicial Council.